[Cite as *Macklin v. Citimortgage, Inc.*, 2015-Ohio-97.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 101077

## STEPHEN M. MACKLIN, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## CITIMORTGAGE, INC.

DEFENDANT-APPELLEE

### JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-780978

**BEFORE:** Jones, P.J., S. Gallagher, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** January 15, 2015

**ATTORNEYS FOR APPELLANTS**

Gary Cook
Michael Aten
20525 Center Ridge Road
501 Westgate Tower
Suite 501
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Amanda J. Martinsek
Marquettes D. Robinson
Thacker Martinsek L.P.A.
1375 East 9th Street
One Cleveland Center
Suite 2330
Cleveland, Ohio 44114

Stephen J. Kane
c/o Meyer Brown L.L.P.
71 South Wacker Drive
Chicago, Illinois    60606

LARRY A. JONES, SR., P.J.:

{¶1} Plaintiffs-appellants Stephen and Esther Macklin appeal from the trial court's decision granting summary judgment in favor defendant-appellee CitiMortgage, Inc. We affirm.

I. Procedural History and Facts

{¶2} In 2012, the Macklins filed this action against CitiMortgage, alleging claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.

{¶3} According to the complaint, CitiMortgage was the servicer of a 2000 mortgage loan the plaintiffs took out for the purchase of their home. The Macklins were unable to make their monthly mortgage payments, and in 2009, contacted CitiMortgage to apply for a loan modification under the Home Affordable Modification Program ("HAMP"). The plaintiffs signed a document titled Trial Period Plan ("TPP"), under which they made reduced monthly payments to CitiMortgage.[1]

{¶4} According to the Macklins, the TPP provided that if they complied with its terms, CitiMortgage would provide them with a modified loan under HAMP. The plaintiffs contend that despite their compliance with all the terms of the TPP, CitiMortgage never offered them a permanent loan modification, but, instead, informed them that their mortgage was delinquent and due and owing.

{¶5} CitiMortgage filed a motion to dismiss, which the trial court converted to a motion for summary judgment. CitiMortgage maintained that the TPP was not binding on it to offer the plaintiffs a modified loan; rather, it was a means of providing them relief while their loan

---

[1]The original TPP signed by plaintiffs is not part of the record. CitiMortgage's TPP is a standard document, and it made one part of the record. It is uncontested that a CitiMortgage representative never signed the document.

application was being processed. According to CitiMortgage, the reduced payment arrangement would only continue if the loan application was approved, which would be memorialized under another, this time, binding, document. The trial court agreed with CitiMortgage and granted summary judgment in its favor. In their sole assignment of error, the Macklins contend that the trial erred in its decision to grant CitiMortgage's summary judgment.

## II. Law and Analysis

{¶6} An appellate court reviews a decision granting summary judgment on a de novo basis. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 672 N.E.2d 654 (1996).

{¶7} We start our de novo review by examining the TPP. At the beginning of the document, under its title, it reads, "(Step One of Two-Step Documentation Process)." Section one of the document governs "Representations" made by the borrowers as to why they cannot afford their mortgage payment. It also governs certifications made about the borrowers' income. Section 2 of the document governs "The Trial Period Plan," and provides in pertinent part as follows:

> E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;
>
> F. If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not

made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me;

G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

{¶8} Section three of the document governs "The Modification," and provides, in part, as

follows:

If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount * * *. Upon execution of a Modification Agreement by the Lender and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan.

{¶9} A final relevant provision, contained in Section 4, "Additional Agreements," of the

document, provides:

That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Lender and I will be bound by, and comply with all of the terms and provisions of the Loan Documents.

**Breach of Contract**

{¶10} Under a plain reading of the TPP, it is clear that the plan was the first step for a

borrower to complete before his or her loan potentially could be modified. Further, the

document clearly states that, although the lender would accept reduced payments during the

effective period of the plan, the original loan was still in "full force and effect." Thus, the

document, standing alone, did not bind CitiMortgage to modify the Macklins' loan.

**{¶11}** The Tenth District considered a TPP with language substantially similar to the TPP herein. *Wells Fargo Bank, N.A. v. Bielec*, 10th Dist. Franklin No. 13AP-330, 2014-Ohio-1805. The court found that the TPP did not create a binding agreement. Rather, the court agreed with the lender's position that the plan "memorializes only a temporary deviation from the payment terms of the Note and Mortgage pending approval of a permanent modification of the Note and Mortgage." *Id.* at ¶ 18.

**{¶12}** In so finding, the Tenth District noted (1) the parenthetical language immediately beneath the document's title: "(Step One of Two-Step Documentation Process)"; (2) the lack of the lender's signature on the document; and (3) that the parties never executed a written HAMP Modification Agreement as required under the TPP. *Id.* at ¶ 18-19; *see also Bank of Am., N.A. v. Robledo*, 10th Dist. Franklin No. 13AP-278, 2014-Ohio-1185, ¶ 21 ("Because the TPP is neither a promise nor a binding contract, appellants' breach of contract claim must fail.")

**{¶13}** In light of the above, the trial court properly granted summary judgment in favor of CitiMortgage on the Macklins' breach of contract claim.

**Breach of Implied Covenant of Good Faith and Fair Dealing**

**{¶14}** The Macklins claim that CitiMortgage breached the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing is part of a contract claim and does not stand alone as a separate claim from breach of contract. *Lakota Local School Dist. Bd. of Edn.*, 108 Ohio App.3d 637, 646, 671 N.E.2d 578 (6th Dist.1996). Because we have found that there was no contract between the Macklins and CitiMortgage, their breach of the implied covenant of good faith and fair dealing must necessarily also fail, and summary judgment was properly granted on the claim.

**Promissory Estoppel**

**{¶15}** The Macklins also alleged that even if the parties did not execute a written loan modification agreement, CitiMortgage should be estopped from enforcing the original Note and Mortgage because they relied on CitiMortgage's promise of a modification to their detriment.

**{¶16}** To maintain a claim of promissory estoppel, the Macklins need to demonstrate that (1) there was a clear and unambiguous promise; (2) they relied upon the promise; (3) their reliance was reasonable and foreseeable; and (4) they were injured as a result of their reliance. *Olympic Holding Co., LLC v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, ¶ 39. According to the Macklins, CitiMortgage, "by way of its trial period agreements, made a representation to [them] that if they returned the agreements executed and the supporting documentation, and made their trial period payments, they would receive permanent modifications." First amended complaint, ¶ 61. We disagree.

**{¶17}** As set forth above, the TPP clearly states that it was not a permanent agreement, that the original loan and mortgage documents were still in effect, and that in order for the payments to become permanent, a Modification Agreement would have to be executed, but one never was.

**{¶18}** In light of the above, the trial court properly granted judgment in favor of CitiMortgage on the Macklins' promissory estoppel claim.

**{¶19}** Judgment affirmed.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules

of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
TIM McCORMACK, J., CONCUR