[Cite as *Frebes v. Am. Fam. Ins. Co.*, 2020-Ohio-4750.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JERRY FREBES,                                    :

    Plaintiff-Appellant,                  :

                             No. 109117

    v.                                         :

AMERICAN FAMILY INSURANCE                         :
COMPANY, ET AL.,

                                      :

    Defendant-Appellees.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 1, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-908662

---

### *Appearances:*

Vincent Esquire, Ltd., Paul W. Vincent, and Adam J. Vincent, *for appellant*.

Roetzel & Andress, L.P.A., Denise M. Hasbrook, and Nathan Pangrace; Squire Patton Boggs (US), L.L.P., and Lauren S. Kuley, *for appellees*.

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Plaintiff-appellant, Jerry Frebes, appeals an order granting summary judgment in favor of defendant-appellees, American Family Insurance Company, American Family Mutual Insurance Company, American Family Life Insurance

Group, American Family Insurance Group, and American Family Securities, L.L.C. (collectively "American Family").  Frebes claims the following three errors:

> 1. The lower court erred when it ruled that defendants met the Civ.R. 56 summary judgment standard concerning appellant's breach of contract claim and breach of covenant of good faith and fair dealing claim.
>
> 2. The lower court erred when it dismissed plaintiff's case without allowing plaintiff the opportunity to file his dispositive motion contrary to the scheduling order.
>
> 3.  The lower court erred when it denied plaintiff's motion requesting additional time to respond to the appellees' motion for summary judgment so that all evidence and discovery could be presented to the court.

{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.

## I.  Facts and Procedural History

{¶ 3} Frebes became an independent insurance agent for American Family in April 2001.  In December 2006, Frebes left his insurance agency and accepted a management employee position with American Family as District Sales Manager, where he earned a salary of $138,000 per year.  Approximately one year later, Frebes decided to resign from the District Sales Manager position and return to his former status as an American Family insurance agent.

{¶ 4} Frebes and American Family reached an agreement regarding the terms of Frebes's transition back into an agency position.  The agreement was memorialized in a letter, dated November 13, 2007, addressed to Frebes from LaTunja Jackson ("Jackson"), American Family Sales Director – Ohio North ("the November 2007 letter").  With respect to compensation, the November 2007 letter provided, in relevant part:

The renewals of this agency, at the reduced rate, are estimated to average $11,500 per month. Any month the renewals fall below $11,500, Agency Services will send a check for the difference of the actual renewals and the $11,500 target. Beginning with the agent account statement in January 2008, you will receive the following: agency renewals and agency new business; current staff will be reimbursed based upon actual expense through the Employer Group program to a maximum of $1,500 per month until June 2008.

{¶ 5} Thus, American Family promised to assign existing insurance policies to Frebes as a book of business to assist his transition. As indicated in the November 2007 letter, the commissions on renewals for these assigned policies were estimated to total $11,500 per month. The letter also contemplated that commissions on renewals might "fall below $11,500." Thus, American Family agreed to subsidize Frebes's business while he was transitioning from his position as District Sales Manager to that of independent insurance agent. For any month that commissions fell below the estimated $11,500, American Family agreed to pay Frebes a subsidy equal to the difference. However, due to the uncertain nature of things, the November 2007 letter indicated that this arrangement was subject to change after the transition period was over. The letter stated, in relevant part:

We will review your budget, production, profit indicators, renewals, AFMIC retention, growth, and on-going plan, after nine months in agency. Based on the terms listed, we will make any adjustments to the above program, effective in thirteen months.

{¶ 6} On December 1, 2007, Frebes and American Family executed a contract known as an American Family Agent Agreement, which outlined the scope of Frebes's agency, the terms of his compensation, and termination procedures (the "agency agreement"). The agency agreement did not mention the temporary

subsidization of Frebes's insurance agency during the transition period described in the November 2007 letter. Rather, the agency agreement provided that Frebes would be compensated pursuant to compensation schedules set forth in the agreement based on the nature and number of insurance policies he sold or renewed. In other words, the agency agreement provided that Frebes would be compensated according to his sales and renewal production.

{¶ 7} American Family continued to make full subsidy payments through December 2010, which was longer than the 13 months stated in the November 2007 letter. In the meanwhile, Jackson informed Frebes that his net application production was unacceptable as measured against the median production of his district. (Jackson affidavit at ¶ 21.) According to Jackson, Frebes was required to improve his net application production to at least 30 per month, and Jackson offered to assist him in meeting this goal. Despite the notice and offer of assistance, Frebes failed to improve his performance. (Jackson affidavit at ¶ 22.) Between August 21, 2009 and November 12, 2010, Jackson sent Frebes 13 additional notices warning him that his net application production was not acceptable. Consequently, in November 2010, Jackson informed Frebes that American Family would begin reducing his temporary monthly subsidy beginning in January 2011. In a letter dated November 9, 2010, Jackson informed Frebes that his previous guarantee of $11,500 per month would be reduced by $575 per month until the guarantee reaches $0 in August 2012.

{¶ 8} In January 2012, Jackson assigned Lisa Sanger ("Sanger"), an American Family agency sales manager to monitor Frebes's application production. Sanger sent Frebes written notices and warnings that his performance was failing to meet the company's expectations. In June 2012, Sanger sent Frebes a warning that his failure to meet expectations and improve production would result in termination of his agency agreement. (Jackson affidavit at ¶ 29.) Meanwhile, American Family customers were filing formal complaints regarding Frebes's service. The customers complained that they were unable to reach Frebes by phone, that he was rude, and that he ignored them. (Jackson affidavit at ¶ 30.) Consequently, on June 13, 2012, Frebes received a formal written notice of undesirable performance under the terms of his agency agreement. Ultimately, American Family terminated Frebes's independent agency relationship on December 14, 2012.

{¶ 9} Frebes filed a complaint against American Family on December 14, 2016, alleging claims for breach of contract, tortious interference with business relationships, negligent misrepresentation, fraud, and unjust enrichment. After voluntarily dismissing the case without prejudice, Frebes refiled the complaint in December 2018. This time, Frebes alleged claims of breach of contract, tortious interference with business relationships, negligent misrepresentation, fraud, unjust enrichment, unfair competition, and breach of covenant of good faith and fair dealing.

{¶ 10} American Family filed a motion for summary judgment on all claims, arguing the claims were barred by the applicable statutes of limitation. American

Family also argued that even if the claims were not time-barred, there was no evidence that it breached a contract with Frebes, that it engaged in tortious misconduct, or that it made any fraudulent or negligent misrepresentations to Frebes. American Family further asserted that it never retained an unfair benefit from Frebes or engaged in unfair competition with Frebes since they had no competitive interests; their interests were aligned. Finally, American Family argued that Ohio law does not recognize Frebes's seventh cause of action based on an alleged breach of a covenant of good faith and fair dealing.

{¶ 11} Frebes failed to file a timely response to American Family's motion for summary judgment. The court nevertheless granted Frebes an extension of time to file a response after the response deadline had passed. The court also granted Frebes an extension of the discovery deadline, which had also expired. But Frebes again failed to file a motion for summary judgment by the newly extended dispositive motion deadline. Thereafter, the trial court granted American Family Insurance's motion for summary judgment, finding that Frebes's claims for tortious interference with business relationships, negligent misrepresentation, fraud, unjust enrichment, and unfair competition were time-barred.

{¶ 12} With respect to Frebes' breach-of-contract claim, the trial court concluded:

> The court finds that American Family's policy decision in terminating the agency agreement does not constitute a breach of contract and defendants' actions were permissible under the contract. Furthermore, there is no evidence demonstrating American Family acted with

deliberate purpose of harming Frebes's business relationships with American Family customers.

{¶ 13} Frebes now appeals the trial court's judgment.

## II. Law and Analysis

## A. Summary Judgment

{¶ 14} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his or her favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 696 N.E.2d 201 (1998).

{¶ 15} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts, supported by evidence in the record, demonstrating that he or she is entitled to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment should be denied. *Id.* at 293. If the moving party meets this burden, the burden shifts to the nonmoving party to present evidence of specific facts in the record demonstrating the existence of a genuine issue of material

fact for trial. *Id.* The nonmoving party fails to meet this burden, then summary judgment should be granted. *Id.*

## B. Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing

{¶ 16} In the first assignment of error, Frebes argues the trial court erred in granting summary judgment on his claims for breach of contract and breach of a covenant of good faith and fair dealing.[1]

{¶ 17} Frebes failed to oppose American Family's motion for summary judgment in the trial court, even after obtaining an extension of time in which to do so. Having failed to contest American Family's motion for summary judgment, Frebes forfeited any opposition to the arguments asserted by American Family in the trial court. *Jaber v. FirstMerit Corp.*, 9th Dist. Summit No. 27993, 2017-Ohio-277, ¶ 27; *Leonard v. MBB Partnership,* 10th Dist. Franklin No. 15AP-956, 2016-Ohio-3534, ¶ 10-15.

{¶ 18} Nevertheless, we must determine whether American Family met its burden of demonstrating that there are no genuine issues of material fact and that American Family is entitled to summary judgment as a matter of law because the nonmoving party only bears the burden of responding to a motion for summary judgment if the moving party first meets its evidentiary burden. *Dresher*, 75 Ohio St.3d 280, at 270, 662 N.E.2d 264.

---

[1] Frebes does not challenge the trial court's order granting summary judgment on his other five claims. Therefore, the validity of the trial court's judgment on those claims is not an issue in this appeal.

{¶ 19} Frebes argues the trial court erred in granting summary judgment in favor of American Family on his claims for breach of contract and breach of a covenant of good faith and fair dealing. However, parties to a contract are bound by an inherent duty of good faith and fair dealing. *Stancik v. Deutsche Natl. Bank*, 8th Dist. Cuyahoga No. 102019, 2015-Ohio-2517, ¶ 46, citing *Ireton v. JTD Realty Invests., L.L.C.*, 12th Dist. Clermont No. CA2010-04-023, 2011-Ohio-670, ¶ 51. Hence, an alleged breach of a covenant of good faith and fair dealing is a component of a breach-of-contract claim and is not a separate, independent cause of action apart from a breach-of-contract claim. *Id.*, citing *Macklin v. Citimortgage, Inc.*, 8th Dist. Cuyahoga No. 101077, 2015-Ohio-97, ¶ 14. Therefore, the only issue before us is whether the trial court properly granted summary judgment in favor of American Family on Frebes's breach-of-contract claim.

{¶ 20} The complaint alleged that American Family breached two contracts: the November 2007 letter and the agency agreement executed on December 1, 2007. Frebes argues American Family breached the November 2007 letter by failing to provide a book of business that would generate $11,500 per month in business income as promised in the letter. However, neither the November 2007 letter nor the agency agreement promised any specific book of business value, much less a book of business guaranteed to generate $11,500 in income. The November 2007 letter describes the $11,500 as a "target value" and contemplates that monthly renewals may "fall below $11,500." (November 2007 letter attached to Jackson affidavit as Ex. A.) Indeed, American Family agreed to subsidize the difference

between the income Frebes generated from new and renewed business and the target value of $11,500 per month because it was foreseeable that Frebes might not generate $11,500 per month in business during his transition from District Sales Manager to insurance agent.

{¶ 21} And, neither the November 2007 letter nor the agency agreement promised to subsidize the difference between Frebes's production and the estimated value of his potential business forever. The November 2007 letter specifically states that American Family would review Frebes's "budget, production, profit indicators, renewals, AFMIC retention, growth and [his] ongoing plan, after nine months in agency." (November 2007 letter attached to Jackson affidavit as Ex. A.) Moreover, the November 2007 letter states that American Family would "make adjustments" to the subsidy program after 13 months. (November 2007 letter attached to Jackson affidavit as Ex. A.) Therefore, the November 2007 letter never promised to provide Frebes with a book of business that would generate $11,500 in business income nor did it ever promise to subsidize his agency for that amount indefinitely.

{¶ 22} The agency agreement also permitted American Family to gradually eliminate the temporary subsidy provided to Frebes. Section 6(d) of the agency agreement describes changes in compensation and states, in relevant part:

> The Company retains the right to change, alter, amend or terminate any compensation or bonus schedule attached hereto without notice or your consent on the date specified by the Company.

(Agency agreement attached to Jackson affidavit at Ex. B.) Frebes admitted at deposition that Section 6(d) of the agency agreement was unambiguous. The

undisputed evidence demonstrates that American Family never promised Frebes a book of business that would generate $11,500 and never promised to permanently subsidize his agency business. Moreover, there is no evidence that American Family failed to subsidize Frebes's business during the transition period. Therefore, American Family did not breach any contract with Frebes for failing to provide him these things. Indeed, American Family continued to pay the $11,500 subsidy long after the 13 months required by the November 2007 letter.

{¶ 23} The undisputed evidence further shows that American Family fully complied with its contractual obligations in terminating its relationship with Frebes. Frebes alleged in the complaint that American Family breached the agency agreement by failing to provide adequate notice of termination. He alleged that American Family failed to comply with a six-month waiting period before termination after giving him notice of poor performance. Section 6(h)(2) of the agency agreement states, in relevant part:

> After two years from the effective date of this agreement or after the termination date of your agent advance compensation plan, whichever is later, the Company will give you notice in writing of any undesirable performance which could cause termination of this agreement if not corrected. The Company will not terminate this agreement for those reasons for a period of six months after that written notice. * * *

(Agency agreement attached to Jackson affidavit as Ex. B.)

{¶ 24} Frebes and American Family executed the agency agreement on December 1, 2007. Frebes began receiving letters informing him that his net production was less than acceptable in June 2009. Jackson informed Frebes in a

letter dated June 16, 2009, that American Family determined that his net production was unacceptable "as measured against the median production in his district." (June 16, 2009 letter attached to Jackson affidavit as Ex. C.) Jackson further informed Frebes in the letter that he was required to improve his net application to at least 30 per month. Between August 2009 and November 2010, Jackson sent Frebes 13 additional notifications warning him that his net application production was unacceptable. (Jackson affidavit ¶ 22.) Despite these warnings, Frebes's net application production declined rather than improved. (Jackson affidavit ¶ 22.)

{¶ 25} In January 2012, Sanger, who had been assigned to monitor Frebes's production, informed Frebes that his net application production had to meet a bare minimum of 20 applications per month. Despite the warning, from January 2012 until May 2012, his agency's net application production average was 18 per month. Meanwhile, American Family was receiving complaints from customers regarding Frebes' poor customer service. Frebes also issued an insurance policy to a customer with an ineligible risk according to the company's underwriting guidelines. Consequently, Sanger sent Frebes written notice, dated June 13, 2012, informing him that his performance was "undesirable" in the areas of production and customer service under the terms of the agency agreement. Sanger warned Frebes that it was imperative that he increase his net application production to at least 20 per month and provide an acceptable level of customer service to his clients or his failure to

meet these standards would result in termination of his agency agreement. (Jackson affidavit ¶ 27-30.)

{¶ 26} Despite monthly notices and warnings, Frebes's net application production failed to improve, and he failed to meet his monthly net application production minimum of 20. (Jackson affidavit ¶ 31.) American Family terminated Frebes's agency relationship on December 14, 2012, six months after Sanger's June 13, 2012 letter warning Frebes that his failure to meet the company's expectation would result in termination. Therefore, the undisputed evidence shows that American Family complied with the termination provisions set forth in the agency agreement.

{¶ 27} Frebes nevertheless argues that the benchmarks American Family set for his production requirements were "arbitrarily high" and "baseless." (Appellant's brief p.12.) However, he has not produced any evidence of the quality required by Civ.R. 56(C) to support this contention. Evidence in the record indicates that benchmarks set by American Family were based on "the median production in his district." (Jackson affidavit ¶ 21.) Based on the median production in his district, Frebes was required to produce at least 30 net applications per month. (Jackson affidavit ¶ 21.) Yet, American Family did not threaten to terminate Frebes's agency until his production fell below 20 per month, well below the median in his district. Therefore, Frebes's claim that American Family set arbitrarily high benchmarks for his production is not supported by the evidence.

{¶ 28} The first assignment of error is overruled.

## C. Opportunity to File a Motion for Summary Judgment

{¶ 29} In the second assignment of error, Frebes argues the trial court erred in dismissing his complaint without affording him an opportunity to file his own dispositive motion by the court's originally scheduled dispositive motion deadline. He claims that by granting American Family's motion for summary judgment, which was filed more than three months before the dispositive motion deadline, the court deprived Frebes of the opportunity to file his own motion for summary judgment.

{¶ 30} At a case management conference in March 2019, the trial court set a dispositive motion deadline of September 16, 2019. Although American Family filed its motion for summary judgment in May 2019, the trial court did not rule on American Family's motion for summary judgment until the dispositive motion deadline, i.e., September 16, 2019. Thus, Frebes had until the originally scheduled dispositive motion deadline of September 16, 2019, to file a motion for summary judgment, but he did not. Therefore, the trial court did not deprive Frebes of the opportunity to file a motion for summary judgment by granting American Family's timely filed motion.

{¶ 31} Frebes nevertheless contends that after taking Jackson's deposition on August 13, 2019, he had a reason to file a dispositive motion on his breach of contact claim. However, Frebes not only failed to file the motion by the September 16, 2019 dispositive motion deadline, he never requested an extension of the dispositive motion deadline if he needed one. Although he filed a motion for additional time on August 29, 2019, he only requested additional time to *respond* to American Family's

motion for summary judgment that had been pending since May 8, 2019. The trial court denied the requested extension on September 10, 2019, presumably because the court had already granted Frebes an extension of time to file a brief in response to American Family's motion for summary judgment.

{¶ 32} A trial court has inherent authority to control its own docket. *Bayview Loan Servicing L.L.C. v. St. Cyr*, 2017-Ohio-2758, 90 N.E.3d 321, ¶ 26 (8th Dist.), citing *6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, 62 N.E.3d 928, ¶ 18 (8th Dist.). We, therefore, will not disturb the trial court's regulation of its docket absent an abuse of discretion. *Id.* An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13.

{¶ 33} Frebes had six months between the time of the case management conference on March 18, 2019, and the dispositive motion deadline on September 16, 2019, in which to file a dispositive motion. Although Frebes maintains he discovered a basis for filing a dispositive motion after taking Jackson's deposition in August 2019, the case management order dated March 18, 2019, set a discovery motion deadline for June 14, 2019. Therefore, Frebes was already late completing discovery by the time he discovered a possible basis for filing a motion for summary judgment.

{¶ 34} Additionally, the trial court granted Frebes additional time to respond to American Family's motion for summary judgment. Moreover, the trial court granted American Family's motion for summary judgment after Frebes failed to

rebut American Family's showing that there were no genuine issues of material fact and that American Family was entitled to judgment as a matter of law. When the trial court granted American Family's motion and dismissed Frebes's complaint, it did so in compliance with the Ohio Civil Rules governing summary judgment, the local rules, the court-ordered deadlines, and the court's inherent authority to manage its docket. Frebes was afforded several months in which to file a dispositive motion, but he did not. We, therefore, cannot say that the trial court abused its discretion in granting summary judgment in favor of American Family and dismissing Frebes's complaint under these circumstances.

{¶ 35} The second assignment of error is overruled.

### D. Second Request for Extension of Time

{¶ 36} In the third assignment of error, Frebes argues the trial court erred in denying his request for additional time to respond to American Family's motion for summary judgment. He contends he should have been given an extension of time to respond to American Family's motion because he did not receive the deposition transcript of American Family's primary witness until September 11, 2019, despite his request that transcription of the deposition be expedited.

{¶ 37} However, Frebes ignores the fact that the trial court had already extended the response deadline by two and half months before he made this latest request for another extension. Although Frebes contends the additional time was necessary so that "all evidence and discovery could be presented to the Court," the trial court had previously extended the discovery deadline by two extra months.

Frebes fails to explain why he failed to complete discovery and present all the necessary evidence within the timeframe previously ordered by the court. Furthermore, when a party seeks additional time to respond to a motion for summary judgment for discovery reasons, Civ.R. 56(F) requires the party opposing the summary judgment motion to submit an affidavit showing sufficient reasons as to why additional discovery is necessary. *Jacobs v. Jones*, 10th Dist. Franklin No. 0AP-930, 2011-Ohio-3313, ¶ 58. "'Mere allegations requesting a continuance for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment.'" *Id.*, quoting *Hahn v. Groveport*, 10th Dist. Franklin No. 07AP-27, 2007-Ohio-5559, ¶ 30.

{¶ 38} Frebes did not attach any affidavits to his motion for extension of time to respond to American Family's motion for summary judgment explaining why he was unable to obtain the deposition transcript sooner or why he was unable to file a timely response to American Family's motion for summary judgment. Nor did Frebes even request additional time to file his own motion for summary judgment prior to the dispositive motion deadline. We, therefore, find no abuse of discretion in the trial court's order granting American Family's summary judgment, which was supported by the evidence and was unopposed by Frebes.

{¶ 39} The third assignment of error is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE  JUDGE

EILEEN A. GALLAGHER, J., and
RAYMOND C. HEADEN, J., CONCUR