[Cite as *Carrington Mtge. Servs., L.L.C. v. Goodwin*, 2024-Ohio-5801.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

CARRINGTON MORTGAGE SERVICES, LLC,

Plaintiff-Appellee,

v.

PHILLIP B. GOODWIN, ET AL.,

Defendants-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 CO 0024**

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2017 CV 630

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Shannon O'Connell Egan* and *Atty. Harry W. Cappel*, Dinsmore & Shohl LLP, for
Plaintiff-Appellee and

*Atty. Bruce M. Broyles,* for Defendant-Appellant.

Dated:  December 11, 2024

**HANNI, J.**

{¶1} Defendant-Appellant, Phillip B. Goodwin, appeals from a Columbiana County Common Pleas Court judgment granting summary judgment in favor of Plaintiff-Appellee, Carrington Mortgage Services, LLC, on Appellant's counterclaims for breach of contract and conversion following Appellee's complaint in foreclosure. Appellant argues that he substantially complied with a trial payment plan. Because of his alleged substantial compliance, Appellant claims Appellee breached a contract and converted his payment funds. Because the trial payment plan was not a contract between the parties and because the payments Appellant made went toward paying his loan balance, the trial court properly granted summary judgment in Appellee's favor.

{¶2} On May 8, 2007, Appellant and his wife at the time, Defendant Carri Goodwin, executed a promissory note (Note) with Countrywide Homes and secured a loan and mortgage to purchase their home. On May 15, 2015, Appellant and Carri were divorced and Appellant was awarded the property that secured the Note.

{¶3} Appellee began servicing the loan on December 1, 2015. On January 4, 2017, Appellant entered into a loan modification agreement with Appellee (Loan Modification Agreement).

{¶4} On December 21, 2017, after multiple missed payments and attempts at contact, Appellee filed a complaint in foreclosure against Appellant and Carri. It asserted it was the holder of the Note and Loan Modification Agreement. The complaint alleged the Goodwins had defaulted on the Note and a sum of $124,199.35 was due and owing. Appellant filed an answer on March 23, 2018, denying the allegations. Carri filed a separate answer also denying the allegations.

{¶5} On March 23, 2018, the trial court ordered the parties to participate in foreclosure mediation. The court removed the case from its active docket and ordered it stayed until further order. It appears the mediation and loss mitigation began in August 2018 and continued for over a year. During this time, Appellee offered a Trial Period Plan (the TPP). The TPP contained signature lines for both Appellant and Carri to sign, despite the fact that Carri no longer had an interest in the property. It instructed that the TPP be returned to Appellee by September 1, 2019. It also set out a schedule for three payments.

Appellant made the three payments but did not sign and return the TPP at this time. Appellant did not make any further payments. Appellee sent a cancellation of the proposed TPP on October 8, 2019, noting that it never received a signed copy from Appellant.

{¶6} On October 5, 2020, Appellee filed a motion to terminate mediation and transfer the case to the inactive docket. The trial court granted the motion. The court acknowledged that mediation was unsuccessful. But the court found that the subject property was subject to the federal moratorium on foreclosures at the time. The court ordered the case to remain on the inactive docket until a motion to reactivate was filed.

{¶7} On October 14, 2021, Appellee filed a motion to reinstate the case to the active docket because the foreclosure moratorium had been lifted. The court granted the motion and reinstated the case on November 1, 2021.

{¶8} On January 10, 2022, Appellant filed a motion for leave to file a counterclaim that he asserted arose during the pendency of the litigation. The trial court granted Appellant's motion. Appellant filed his counterclaim asserting: (1) breach of contract, alleging Appellee refused to modify the loan without Carri's signature and ignoring his TPP payments; (2) conversion, for accepting his TPP payments; and (3) a violation of the Real Estate Settlement Procedures Act (RESPA) 12 CFR 1024.41, for failing to provide him with sufficient additional time to submit the TPP.

{¶9} The trial court once again removed the case from its active docket on June 13, 2022, and stayed the matter as the parties informed it that they were engaged in loss mitigation review. On Appellee's motion, on July 13, 2023, the trial court returned the case to its active docket.

{¶10} Appellee then filed a motion for summary judgment on December 1, 2023. It asserted it was entitled to summary judgment on all claims and counterclaims. Appellant filed a response in opposition to Appellee's summary judgment motion.

{¶11} On January 24, 2024, the trial court granted Appellee's motion for summary judgment as to Appellant's counterclaims. It denied the motion as to Appellee's claims. As to Appellee's claims, the trial court determined that Appellee had failed to satisfy the condition precedent to foreclosure set out in 24 C.F.R. 203.604(d), which requires "at a minimum one letter sent to the mortgagor certified by the Postal Service as having been

dispatched." The court noted that Appellee's affidavit attesting to the records in this case did not state that any correspondence was sent to Appellant by certified mail as required by 24 C.F.R. 203.604(d). Therefore, the court determined it could not grant summary judgment on Appellee's claims. As to Appellant's counterclaim for breach of contract, the trial court found that Appellant did not timely execute and return the TPP. Therefore, it reasoned, Appellant could not now claim Appellee breached the TPP's terms. As to the conversion counterclaim, the court found that Appellee did not wrongfully exercise dominion over the payments Appellant made. And as to the violation of 12 CFR 1024.41, the court found that Appellant did not respond to Appellee's summary judgment motion on this claim. It also found that while 12 CFR 1024.41 establishes obligations for how a mortgage-loan servicer must handle a borrower's loss-mitigation application, those obligations are only triggered when the borrower completes a loss-mitigation application.

{¶12} Because the trial court's ruling disposed only of the counterclaims, the case continued.

{¶13} On April 16, 2024, with leave of court, Appellee filed a renewed motion for summary judgment and a supplemental affidavit. Appellee asserted, and the affidavit demonstrated, that there was no genuine issue of material fact that it sent certified letters to Appellant on three occasions as required by 24 CFR 203.604(d), which satisfied all conditions precedent to foreclosure.

{¶14} The trial court granted Appellee's renewed motion for summary judgment on May 21, 2024. Therefore, the court entered judgment in favor of Appellee along with a decree of foreclosure.

{¶15} Appellant filed a timely notice of appeal on June 20, 2024. This Court granted a stay of execution of the trial court's judgment pending resolution of this appeal.

{¶16} Appellant now raises a single assignment of error. We note that Appellant does not raise any issues with the grant of summary judgment in favor of Appellee on Appellee's complaint. His assignment of error only takes issue with the grant of summary judgment in favor of Appellee on his counterclaims for breach of contract and conversion. Appellant's sole assignment of error states:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLANT'S SUPPLEMENTAL COUNTERCLAIM OF BREACH OF

CONTRACT AND CONVERSION BASED SOLELY UPON APPELLANT'S FAILURE TO RETURN THE TRIAL PAYMENT PLAN BY THE [sic] SEPTEMBER 1, 2019, AS GENUINE ISSUES OF MATERIAL FACT REMAINED AS TO WHETHER APPELLEE WAIVED THE REQUIREMENT OR WHETHER APPELLEE ACTED INEQUITABLY.

{¶17} Appellant argues a genuine issue of material fact exists as to whether he substantially complied with the TPP by timely making payments. He further argues a genuine issue of material fact exists as to whether Appellee acted inequitably in cancelling the TPP. He points to evidence that he made payments, which Appellee accepted, after the September 1, 2019 deadline to return the TPP. And he points to evidence that the TPP included a signature line for Carri, which he asserts should not have been included on the document. Appellant claims it would be a reasonable inference that Appellee encouraged him to make the payments and to believe that it would honor the TPP.

{¶18} An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 2005-Ohio-4559, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶19} A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

{¶20} The elements of a breach of contract claim are: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damage to the plaintiff. *Cook v. Kudlacz*, 2012-Ohio-2999, ¶ 13 (7th Dist.).

{¶21} The elements of a conversion claim are: (1) the plaintiff had ownership or right of possession of the property at the time of conversion, (2) the defendant's

conversion of plaintiff's property by a wrongful act or disposition, and (3) resulting damages to the plaintiff. *BT Environmental Sols. LLC v. BT Energy Group, Inc.*, 2015-Ohio-4147, ¶ 16 (7th Dist.), citing *Dice v. White Family Cos., Inc.*, 2007-Ohio-5755, ¶ 17 (2d Dist.).

**{¶22}** The TPP provides in relevant part:

You are eligible for a Partial Claim and/or permanent Loan Modification under the Federal Housing Administration Home Affordable Modification Program (FHA-HAMP). . . The next step for you is to begin your Trial Period Plan. . .

**How to accept this offer**

To accept this offer, you must return the signed FHA-HAMP Trial Period Plan Agreement and begin making the trial period payments provided in the Trial Period Plan below. During the Trial Period please pay the new Trial Period Plan payment instead of your current monthly mortgage payment which will help demonstrate that you can afford the modified payment amount. CMS must receive a signed copy of your Trial Period Plan Agreement by no later than 09/01/2019 using one of the following methods:

- **(Fax) 1.877.357.2773**
- **(Email) _____**
- **(Mail) Carrington Mortgage Services, LLC**
  **1600 South Douglass Road, Suites 110 & 200-A**
  **Anaheim, CA 92806**

(Motion for Summary Judgment, Aff. ¶ 17, Ex. 22).

**{¶23}** The Trial Plan also includes a question and answer section. Included in this section are the following:

**Q. Why is there a trial period?**

Case No. 24 CO 0024

The trial period offers you immediate payment relief and will demonstrate that you can afford the modified payments and that they work within your household budget. The trial period is temporary, and your existing loan and loan requirements remain in effect and unchanged during the trial period. You may continue to receive monthly statements that will reflect a payment amount based on your current home loan agreement; however, please pay the new trial period payment amount until your loan is permanently modified instead of your regular monthly payment amount. The difference between the amount of the trial period payment and your regular monthly payment will be included in the final modification and/or Partial Claim, if applicable, at the successful conclusion of your trial period.

**Q. When will I know if my loan can be modified permanently and how will the modified payment be determined?**

If you remain eligible for FHA-HAMP, your loan may be permanently modified so that your monthly mortgage payment (including principal, interest, taxes, and insurance) is more affordable. . . Your trial period payments, as well as your final modified payments, are calculated in the same way. . .

**Q. What happens to my trial period payments if I do not comply with the terms of the Trial Period Plan?**

We will apply your trial period payments to your past due balance according to the terms of your loan documents.

(Motion for Summary Judgment, Aff. ¶ 17, Ex. 22).

**{¶24}** And the Trial Plan includes further notices:

**Additional Trial Period Plan Information and Legal Notices**

The terms of your Trial Period Plan take effect on the day you sign the enclosed FHA-HAMP Trial Payment Plan Agreement.

Case No. 24 CO 0024

. . .

**During your trial period, we may accept and post your trial period payments to a suspense account and it will not affect foreclosure proceedings that have already been started.**

(Motion for Summary Judgment, Aff. ¶ 17, Ex. 22).

**{¶25}** At the end of the document, there is a signature line for Appellant and a signature line for Carri. (Motion for Summary Judgment, Aff. ¶ 17, Ex. 22).

**{¶26}** Appellant admits that he did not sign and return the TPP by the September 1, 2019 due date. In fact, he did not return it until January 14, 2020, four months after the deadline. (Supplemental Counterclaim, ¶ 37).

**{¶27}** The TPP instructed Appellant to make three trial period payments of $867.20, due on September 1, 2019, October 1, 2019, and November 1, 2019. (Motion for Summary Judgment, Aff. ¶ 17, Ex. 22). The TPP then states: "I will make each of the three scheduled trial payments by the last day of the month in which they are due or I will risk losing my eligibility for a permanent Loan Modification under this Program." (Motion for Summary Judgment, Aff. ¶ 17, Ex. 22).

**{¶28}** Each of the three payments was withdrawn from Appellant's checking account. On September 5, 2019, October 3, 2019, and November 2, 2019, Appellee received an automated payment from Appellant's checking account in the amount of $867.20. (Motion for Summary Judgment Aff. ¶ 11, Ex. 8).

**{¶29}** But pursuant to the terms of the TPP itself, by making these three TPP payments, Appellant was simply keeping his eligibility for a permanent loan modification a possibility. Making the payments did not create a contract between the parties. Therefore, there can be no breach of contract.

**{¶30}** In support of its position, Appellee relies on *Macklin v. Citimortgage, Inc.*, 2015-Ohio-97 (8th Dist.). In *Macklin*, the trial court granted summary judgment in favor of the lender on the Macklins' breach of contract claim stemming from a trial payment plan. In that case, the Macklins signed the TPP and made the required payments, complying with all terms. Still, the lender never offered them a permanent loan modification, but, instead, informed them that their mortgage was delinquent and due and

owing.  In affirming the trial court's judgment, the Eighth District reasoned:

> Under a plain reading of the TPP, it is clear that the plan was the first step for a borrower to complete before his or her loan potentially could be modified.  Further, the document clearly states that, although the lender would accept reduced payments during the effective period of the plan, the original loan was still in "full force and effect."  Thus, the document, standing alone, did not bind CitiMortgage to modify the Macklins' loan.
>
> The Tenth District considered a TPP with language substantially similar to the TPP herein.  *Wells Fargo Bank, N.A. v. Bielec*, 10th Dist. Franklin No. 13AP-330, 2014-Ohio-1805.  The court found that the TPP did not create a binding agreement.  Rather, the court agreed with the lender's position that the plan "memorializes only a temporary deviation from the payment terms of the Note and Mortgage pending approval of a permanent modification of the Note and Mortgage."  *Id.* at ¶ 18.
>
> In so finding, the Tenth District noted (1) the parenthetical language immediately beneath the document's title: "(Step One of Two-Step Documentation Process)"; (2) the lack of the lender's signature on the document; and (3) that the parties never executed a written HAMP Modification Agreement as required under the TPP.  *Id.* at ¶ 18-19; *see also Bank of Am., N.A. v. Robledo*, 10th Dist. Franklin No. 13AP-278, 2014-Ohio-1185, ¶ 21 ("Because the TPP is neither a promise nor a binding contract, appellants' breach of contract claim must fail.")

*Id.* at ¶ 10-12.

{¶31} This case is nearly identical to *Macklin*, except that in this case Appellant did not comply with all terms of the TPP because he did not timely sign and return the TPP as did the Macklins.  As was the case in *Macklin*, the TPP here provided that, although Appellee would accept reduced payments during the effective TPP period, the original loan was still in "full force and effect."  The TPP also provided that while Appellant

was eligible for a permanent loan modification, the TPP was just the "next step" in the process. Additionally, like in *Macklin*, Appellee (the lender) did not execute the TPP.

**{¶32}** The TPP was simply a step in the process towards a potential loan modification. And even if Appellant did substantially comply with the TPP, Appellee was not obligated to enter into a permanent loan modification with Appellant. It could still proceed with foreclosure as per the terms of the TPP.

**{¶33}** In finding the plaintiffs had failed as a matter of law to state a claim upon which relief could be granted on their claim that the payment of all of the payments required under their trial period plan created an enforceable contract, the Northern District Bankruptcy Court of Ohio explained:

> However, applicable Ohio law supports Defendant. *Macklin v. CitiMortgage, Inc.*, 2015 WL 204062 (Ohio App. 8 Dist.2015); *Wells Fargo Bank, N.A. v. Bielec*, 2014 WL 1713125 (Ohio App. 10 Dist.2014); *Nachar v. PNC Bank, N.A.*, 901 F.Supp.2d 1012 (N.D. Ohio 2012). . . These courts have uniformly concluded that the contractual language of the temporary modification does not create a binding modification, that the temporary modification is simply step one of the process, a modification signed by the lender is necessary to create a binding modification, and without the binding modification, the original terms of the note remain in full force and effect. Similarly, the courts have also rejected statute of fraud and promissory estoppel claims on the basis that the lenders made no promise of extending permanent modifications.

*In re Cultice,* 2015 WL 5093835 (N.D. Ohio Aug. 27, 2015).

**{¶34}** Based on the above, no genuine issues of material fact exist to preclude summary judgment on the breach of contract counterclaim.

**{¶35}** As to the conversion claim, Appellant made no showing that Appellee converted his property by a wrongful act or disposition or that he suffered resulting damages. Appellant made, and Appellee received three modified payments in September, October, and November 2019. Appellee applied these payments to the outstanding balance due on Appellant's loan. It did not convert Appellant's funds for some

Case No. 24 CO 0024

other purpose. Thus, summary judgment on Appellant's conversion counterclaim was proper.

**{¶36}** Finally, as to Appellant's argument that Appellee acted inequitably, the record demonstrates that Appellee has attempted to work with Appellant since the Loan Modification Agreement in January 2017. Even after this action was filed and after the TPP was cancelled, Appellee still worked with Appellant to avoid foreclosure. On the parties' motion, the trial court removed the case from its active docket from June 13, 2022 until July 13, 2023, and stayed the matter as the parties informed it that they were engaged in loss mitigation review. These actions by Appellee throughout this case do not demonstrate that Appellee acted inequitably.

**{¶37}** Accordingly, Appellant's sole assignment of error is without merit and is overruled.

**{¶38}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**